# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SARAH ALLEN o/b/o D.D.N.　　　　　　　　\*  
　　　　　　　　　　　　　　　　　　　　\*  
　　v.　　　　　　　　　　　　　　　　　\*　　Civil Case No. WDQ-12-2596  
　　　　　　　　　　　　　　　　　　　　\*  
COMMISSIONER, SOCIAL SECURITY　　　　\*  
　　　　　　　　　　　　　　　　　　　　\*  
　　　　　　　　　　　　　　　　　　　　\*  
　　　　　　　　　　\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPORT AND RECOMMENDATION

Pursuant to Standing Order 2013-06, the above-referenced case was referred to the undersigned for review of the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment, and Ms. Allen's reply. (ECF Nos. 20, 22, 23). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Allen's motion be denied.

Ms. Allen, on behalf of her minor child, D.D.N., applied for childhood SSI on August 21, 2008, alleging a disability onset date of May 15, 2006. (Tr. 82-88). Her claim was denied initially on December 17, 2008, and on reconsideration on April 6, 2009. (Tr. 47-50, 51-52). A hearing was held on May 14, 2010, before an Administrative Law Judge ("ALJ"). (Tr. 27-42). Following the hearing, on July 30, 2010, the ALJ issued an opinion denying benefits. (Tr. 8-26). Because the Appeals Council denied Ms. Allen's request for review, (Tr. 1-6), the ALJ's decision is the final, reviewable decision of the agency.

The ALJ evaluated Ms. Allen's claim using the three-step sequential process for claims involving childhood SSI, as set forth in 20 C.F.R. § 416.924. The ALJ's findings at steps one and two favored Ms. Allen's claim. At step one, the ALJ found that D.D.N. had not engaged in any substantial gainful activity at any relevant time. (Tr. 14). At step two, the ALJ found that D.D.N. suffered from the severe impairment of attention deficit hyperactivity disorder ("ADHD"). *Id.* At step three, however, the ALJ found that D.D.N. did not have an impairment or combination of impairments that met any listing. *Id.* Additionally, the ALJ determined that D.D.N. did not have an impairment or combination of impairments that would be functionally equivalent to any listing. *Id.* Therefore, the ALJ determined that Ms. Allen was not entitled to receive SSI benefits on D.D.N.'s behalf. (Tr. 22).

Ms. Allen asserts seven arguments in support of her appeal: (1) that the Appeals Council failed to properly evaluate a new and material report; (2) that the ALJ improperly considered D.D.N.'s failure to take prescribed medication; (3) that the ALJ erred in evaluating Listing 112.11; (4) that the ALJ erred in making an adverse credibility assessment; (5) that the ALJ assigned inadequate weight to the opinion of D.D.N.'s treating physicians; (6) that the ALJ inadequately considered the opinions of reviewing and examining consultants; and (7) that the ALJ failed to consider whether D.D.N. suffered from other impairments. Each argument lacks merit.

Ms. Allen first contends that the Appeals Council should have remanded the case after receiving new and material evidence that had not been presented to the ALJ, specifically a November 10, 2008 report from consultative examiner Dr. Weinstock. Pl. Mot. 18-20. The record reflects that the Appeals Council both received and considered the cited evidence. (Tr. 1-2). The Appeals Council explained that the report "does not provide a basis for changing the

Administrative Law Judge's decision because Dr. Weinstock's assessment is generally consistent with the Administrative Law Judge's findings." (Tr. 2). Although Ms. Allen's counsel believed that the evidence warranted a different result, nothing in the record demonstrates that the Appeals Council committed any procedural error. Moreover, a review of Dr. Weinstock's opinion and the ALJ's analysis demonstrates that the two are in fact generally consistent. For example, like the ALJ, Dr. Weinstock noted that D.D.N. had not taken medication for several days prior to the consultative evaluation, and noted that the lack of medication "certainly could have affected results." (Tr. 289). "[T]he regulatory scheme does not require the Appeals Council to do anything more than what it did in this case, i.e., 'consider new and material evidence . . . in deciding whether to grant review.'" *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011). The Appeals Council is not required to take any specific action in response to that new and material evidence, and is not required to provide a detailed explanation of its evaluation. *Id.* Because the Appeals Council expressly considered the evidence, I cannot conclude that the Appeals Council discharged its duties improperly.

Ms. Allen next contests the ALJ's determination that D.D.N. willfully failed to take prescribed medication. Although Ms. Allen contends that D.D.N. does not take medication due to the side effects, Pl. Mot. 22-24, as the ALJ noted, "[t]he claimant's mother has variously reported that the claimant simply refuses to take his medicine and that it makes him sick." (Tr. 16). In fact, Ms. Allen testified at the hearing that D.D.N. had been taking his medication for the past nine months, because she had figured out how to get him to take it with Kool-Aid. (Tr. 33-34). That testimony undermines her contention that D.D.N.'s prior non-compliance was attributable to an informed decision not to suffer the side effects, as opposed to a willful decision not to adhere to the treatment regimen. The ALJ cited to evidence suggesting that D.D.N.'s

3

condition is largely controlled by medication. (Tr. 14) (citing a Teacher Questionnaire stating that D.D.N. "excels" when medicated). The ALJ also noted an extensive history of "missing or canceling treating appointments." (Tr. 16). Based on the evidence cited by the ALJ, the finding of willful failure to take prescribed medication is not erroneous.

Ms. Allen's third argument is that the ALJ essentially failed to consider whether D.D.N. met the criterion of listing 112.11. Pl. Mot. 24-25. Ms. Allen posits that because the ALJ relied on D.D.N.'s non-compliance with medications, the ALJ failed to engage in the required listing analysis. *Id.* As noted above, the ALJ provided substantial evidence to support the finding of willful non-compliance. The Teacher Questionnaire cited by the ALJ undermines the contention that D.D.N. met listing 112.11 when he was medicated, because the questionnaire indicated that on medication, D.D.N. "excelled" in a classroom setting. (Tr. 14). ALJs are permitted to rely on opinions from teachers and other educational professionals when considering a child's impairment. *See* 20 C.F.R. § 416.913(d), (d)(2). Moreover, Ms. Allen cites no evidence suggesting that listing 112.11 was met. Because the burden of establishing that a claimant's impairments meet a listing rests with the claimant, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987), the mere suggestion that the ALJ failed to engage in express analysis, without evidence that the analysis could have resulted in a favorable finding, does not suffice to establish prejudicial error.

Ms. Allen next argues that the ALJ failed to properly assess her credibility, and failed to address the weight he assigned to her testimony. Pl. Mot. 25-26. While the ALJ did not expressly assign any measure of weight to Ms. Allen's testimony, it is abundantly evident from the ALJ's opinion that he did not find Ms. Allen to be credible on many issues. *See, e.g.,* (Tr. 16) ("The claimant's mother has variously reported that the claimant simply refuses to take his

4

medicine and that it makes him sick . . . However, the Teacher's Questionnaire makes no mention of the claimant getting sick when he takes his medication, stating only that the claimant "excels" when he takes it."); (Tr. 17) ("Finally, the uniformly hyperbolic nature of their findings suggests an over-reliance in the reporting of the claimant's mother."). However, the ALJ relied on some of Ms. Allen's testimony in other areas, when it appeared to be more consistent with other evidence. *See, e.g.* (Tr. 16) (discussing Ms. Allen's testimony that "the claimant is defiant and hyperactive but modifies his behavior appropriately when punished" and "can focus and complete tasks if, for example, play time is conditioned on completion of those tasks"); (Tr. 21) (noting that the State agency consultant's opinion "is consistent with the claimant's mother's testimony that the claimant must be kept an eye on and occasionally gets into trouble with his friends."). I find no error in the ALJ's consideration of the credibility of Ms. Allen's testimony, because the acceptance or rejection of her testimony as to various topics was supported by substantial evidence.

Ms. Allen's further argues that the ALJ improperly assigned "little weight" to the opinions of D.D.N.'s treating physicians, Drs. Bazemore and Bastien. A treating physician's opinion merits controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996) (refined by 20 C.F.R. § 416.927(d)(2) (1999)). Drs. Bazemore and Bastien each determined that D.D.N. suffered "extreme" limitations in all six areas of functioning. (Tr. 261, 263). Their narrative explanations for their findings, however, do not address the limitations they found in each functional area, which lends credence to the ALJ's conclusion that the reports contain "an obvious exaggeration of the claimant's symptoms in their

uniform findings of extreme limitations across *all* areas of functioning."[1] (Tr. 17, 262, 264). Moreover, the ALJ noted that the medical records showed that Drs. Bazemore and Bastien had only treated D.D.N. a total of four times during two years. (Tr. 17). Given the extremely limited number of examinations by those physicians evidenced by the records, the ALJ was justified in assigning little weight to their opinions. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). Although Ms. Allen testified that D.D.N. had seen the two doctors more frequently, it is the claimant's burden to produce medical records. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting that the claimant bears the burden of proof during the first four steps of the sequential evaluation). In fact, the ALJ requested that any additional records from those physicians be submitted, but Ms. Allen produced none. (Tr. 41). Using the existing record, the ALJ justified his evaluation of the opinions of Drs. Bazemore and Bastien with substantial evidence.

Ms. Allen's sixth argument is that the ALJ assigned insufficient weight to the opinions of three consultative examining physicians and state agency reviewing physicians: Dr. Wild, Dr. Sarno, and Dr. Hirsch. All three physicians either examined D.D.N. or reviewed his records before the time he began taking his medication on a consistent basis, in or about August, 2009. *See* (Tr. 256) (Wild report on April 4, 2009); (Tr. 228) (Sarno report on December 17, 2008); (Tr 248-54) (Hirsch examination on March 13, 2009). With respect to the two reviewing physicians,

---

[1] For example, both doctors noted "extreme limitation" in the area of "health and physical well-being," but nothing in the reports or the medical records justifies any such finding. *See, e.g.,* (Tr. 248) (noting that D.D.N. "has a primary care doctor whom he sees for routine pediatric circumstances, examinations, but has no medical diagnosis and he has not been hospitalized for medical circumstances nor had surgical procedures other than early on in his lifetime, an incision and drainage for some fluid on his knee, but nothing further than that.").

Drs. Wild and Sarno, the ALJ in fact found identical or more severe limitations in each domain except for "interacting and relating with others." (Tr. 17-22, 228, 256). In that domain, the ALJ justified his decision to assign a "less than marked limitation" by relying on the opinion of D.D.N.'s teacher, that demonstrates classroom behavior much improved with medication. (Tr. 19). Also, elsewhere in the opinion, the ALJ noted that D.D.N.'s suspensions from school numbered only two and were limited to a one-month period in which he appeared to be non-compliant with his medication. (Tr. 15). The ALJ therefore disagreed with Dr. Wild's finding of "marked" limitation. (Tr. 19). Although the ALJ did not expressly discuss Dr. Sarno's opinion in the process of evaluating the domain, an implicit assignment of weight can be found in the ALJ's analysis of Dr. Wild's identical conclusion. *See Thomas v. Comm'r, Social Security,* No. WDQ-10-3070, 2012 WL 670522 (D. Md. Feb. 17, 2012) ("Implicit assignments of weight can support meaningful review.") (citing *Chandler v. Comm'r, Social Security*, No. 11-2220, 2011 WL 6062067, at *4 (3d Cir. Dec. 7, 2011)). With respect to Dr. Hirsch's evaluation, the ALJ relied on it in determining D.D.N.'s ADHD to be a severe impairment. (Tr. 14). Dr. Hirsch, like the ALJ, referred to "some lack of compliance with medical treatment" in assessing D.D.N.'s case. (Tr. 253). Although Ms. Allen protests the fact that the ALJ did not expressly discuss the GAF score assigned by Dr. Hirsch, GAF scores do not govern an ALJ's analysis. "[A] GAF score is not determinative of whether a person is disabled. Rather, the Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings." *Melgarejo v. Astrue,* No. JKS 08–3140, 2009 WL 5030706, at *2 (D. Md. Dec. 15, 2009) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). The ALJ's failure to evaluate Dr.

Hirsch's assigned GAF score therefore does not warrant remand.[2]

Finally, Ms. Allen contends that the ALJ failed to consider whether D.D.N. suffers from other impairments, including anxiety and PTSD. Pl. Mot. 35-37; Pl. Reply 5-7. Although there are some reports of anxiety and of D.D.N. having witnessed traumatic events, there is no formal diagnosis of PTSD in the record. In fact, the record contains some contrary evidence, as Dr. Weinstein noted that D.D.N. "was exposed to some potentially traumatic events but seems to have dealt with those. His anxiety may be related to that exposure but also to mom's reaction to same with keeping him close to her in the house." (Tr. 289). Dr. Hirsch listed a number of actual and potential diagnoses, but did not include either anxiety or PTSD. (Tr. 252-53). Moreover, Ms. Allen does not identify any functional limitations that were not already considered by the ALJ in the assessment. The limitations D.D.N. suffers in each domain of functioning were addressed in full by the ALJ. (Tr. 16-22). Ms. Allen further does not cite evidence documenting the presence of listing criteria for listing 112.04 (mood disorders including PTSD) or listing 112.06 (anxiety disorders). As noted above, the burden of establishing that a claimant's impairments meet a listing rests with the claimant, and Ms. Allen has not met that burden. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).

For the reasons set forth above, I respectfully recommend that:

1. The Court GRANT Defendant's Motion for Summary Judgment (ECF No. 22); and

2. The Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 20) and CLOSE this case.

Any objections to this Report and Recommendation must be served and filed within

---

[2] Dr. Hirsch's GAF score is also inconsistent with the substantial evidence cited by the ALJ, which indicates that D.D.N.'s condition is largely controlled by medication.

fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated: July 19, 2013                                          /s/
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge